Michael P. Pappas, Esq.
MICHAEL P. PAPPAS LAW FIRM, P.C.
3 Columbus Circle, 15th Floor
New York, New York 10019
(646) 770-7890 (phone)
(646) 417-6688 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA
Collective Plaintiffs, and proposed Class*

UNITED STATES DISTRICT
EASTERN DISTRICT OF NEW YORK
_____

ANDREA ANDREOU, YENIFER BARRERA, PEDRO
GARCIA, CHRISTINA NTEMA, and ELEONORA
PAPAIOANNOU, on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

-against-

OMONIA CAFÉ, INC. (d/b/a OMONIA CAFÉ),
IOANNIS ("JOHN") ARVANITIS, and MARTHA
GITONEAS-ARVANITIS,

                        Defendants.
_____

**Case No. 17-cv-3328**

**COMPLAINT**

**FLSA COLLECTIVE
ACTION AND RULE 23
CLASS ACTION**

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows:

### JURISDICTION AND VENUE

1.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York Labor Law ("NYLL") claims under 28 U.S.C. § 1367 because they are so related to the claims in this action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein took place in this District.

## THE PARTIES

3.      Defendant Omonia Café, Inc. ("Omonia Café") is a New York corporation that operates Omonia Café, located at 32-20 Broadway, Astoria, New York 11106.

4.      Upon information and belief, Omonia Café has an annual gross volume of sales in excess of $500,000.

5.      Omonia Café employs more than 11 persons within the City of New York.

6.      Defendant Ioannis ("John") Arvanitis is the owner, majority shareholder, and operator of Omonia Café. Mr. Arvanitis exercises sufficient control over Omonia Café's day-to-day operations to be considered an employer of Plaintiffs and those similarly situated. Among other things, Mr. Arvanitis had the power to hire and fire employees, supervised and controlled employees' daily activities, determined the rate and method of payment of employees' wages, and had responsibility for maintaining employment records.

7.      Defendant Martha Gitoneas-Arvanitis is John Arvanitis's spouse, and is a co-owner, shareholder, and operator of Omonia Café. Ms. Gitoneas-Arvanitis exercises sufficient control over Omonia Café's day-to-day operations to be considered an employer of Plaintiffs and those similarly situated. Among other things, Ms. Gitoneas-Arvanitis had the power to hire and fire employees, supervised and controlled employees' daily activities, determined the rate and method of payment of employees' wages, and had responsibility for maintaining employment records.

8.      All Defendants are hereinafter referred to collectively as "Defendants".

9.     Plaintiff Andreou was employed by Defendants as a server from approximately October 2014 to March 2017.

10.     Plaintiff Barrera was employed by Defendants as a server from approximately May 2015 to March 2017.

11.     Plaintiff Ntema was employed by Defendants as a server from approximately February 2014 to March 2017.

12.     Plaintiff Papaioannou was employed by Defendants as a server from approximately June 2012 to March 2017.

13.     Plaintiff Garcia was employed by Defendants as a barista from approximately March 2008 to April 2017.

14.     All the named Plaintiffs are hereinafter referred to collectively as "Plaintiffs".

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiffs bring the First through Fifth Claims for Relief as a collective action pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt persons employed by Defendants as servers and/or baristas at any time on or after the date that is three years before May 16, 2017, the date of the tolling agreement signed by the Parties ("FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan, and common policies, programs, practices, procedures, protocols, routines, and rules, willfully failing and refusing to pay them at the legally-required minimum wage for all hours worked and 1.5

3

times this rate for work in excess of forty hours per work week, allowing non-tipped employees to share in their tips, and unlawfully retaining a portion of tips. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs

17. The First through Fifth Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NYLL

18. Plaintiffs bring the Sixth through Fifteenth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), Rule 23, on behalf of all non-exempt persons employed as servers and/or baristas by Defendants at any time on or after the date that is six years before May 16, 2017, the date of the tolling agreement signed by the Parties (the "Class Period").

19. All said persons, including Plaintiffs, are referred to herein as the "Class". The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The work schedules, positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed.R.Civ.P. 23.

20.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within the sole control of Defendants, upon information and belief, there are more than thirty (30) members of the Class.

21.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failure to pay overtime compensation, illegal tip sharing, illegal retention of tips, failure to provide wage notices and wage statements, unlawful wage deductions, excessive meal credit deductions, unlawful automatic deductions for breaks not taken, and retaliation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

22.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by an attorney who is experienced and competent in both class action litigation and employment litigation, and has previously represented parties in wage and hour cases.

23.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy -- particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a

5

lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burdens of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Upon information and belief, Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the

complaint with a degree of anonymity that allows for the vindication of their rights while eliminating or reducing these risks.

25.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual class members, including:

      a.  Whether Defendants employed Plaintiffs and the Class within the meaning of New York law;

      b.  Whether Defendants paid Plaintiffs and the Class members the minimum wage for all hours worked;

      c.  What are and were the policies, programs, procedures, and protocols and plans of Defendants regarding payment for the type of work that Plaintiffs and the Class members performed;

      d.  At what common rate, or rates subject to methods of calculation, was and is Defendants required to pay Plaintiffs and the Class members for their work;

      e.  Whether Defendants properly compensated Plaintiffs and the Class members for overtime;

      f.  Whether Defendants improperly required Plaintiffs and the Class members to share tips with parties who were not entitled to their tips;

      g.  Whether Defendants illegally retained portions of Plaintiffs' and Class members' tips;

      h.  Whether Defendants provided Plaintiffs and the Class members with legally required wage notices and wage statements;

      i.  Whether Defendants deducted excessive meal credits from Plaintiffs' and the Class members' wages;

j.  Whether Defendants unlawfully deducted from Plaintiffs' and the Class members' wages when customers left without paying the bill;

k.  Whether Defendants automatically deducted one hour of break time from the hours that Plaintiffs and Class members worked, even though they did not take breaks at all or took breaks substantially less than one hour; and

l.  Whether Defendants unlawfully retaliated against Plaintiffs and the Class members after receiving notice of potential wage and hour claims.

## FACTS

26.  Plaintiffs' consent to sue forms are attached hereto as Exhibit A.

27.  Defendants committed the following alleged acts knowingly, intentionally, and willfully.

28.  Defendants knew that (i) nonpayment of minimum wage, (ii) nonpayment of overtime, (iii) improperly forcing the Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class to share their tips with non-eligible employees; (iv) improperly retaining a portion of the tips belonging to Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, (v) failing to provide Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class with legally-required wage statements and wage notices, (vi) making improper deductions from the wages of Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, for non-payment of bills by customers, (vii) automatically deducting one hour of pay from Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class for breaks, even though they did not actually take such breaks, and (viii) deducting an excessive amount from the wages of Plaintiffs, the FLSA Collective Plaintiffs, and

members of the Class for meals, would economically injure Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, and violated federal and state laws.

### Failure to Pay Minimum Wage

29.     Defendants unlawfully paid Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class at a rate that was and is below the federal and state minimum wage.

30.     From the beginning of the limitations period(s) to approximately March 2015, Defendants paid servers a flat daily rate of $25, regardless of the number of hours worked. From approximately March 2015 to March 2017, Defendants paid servers a flat daily rate of $35, regardless of the number of hours worked. From approximately March 2017 to the present, Defendants paid servers a flat daily rate of $45, regardless of the number of hours worked. Because servers typically worked at least 8-10 hours per day, this resulted in an effective hourly wage well below both the federal and New York State minimum wage rates.

31.     From the beginning of the limitations period(s) to approximately March 2016, Defendants did not pay servers any wages at all for day shifts; they worked entirely for tips.

32.     From the beginning of the limitations period(s) to approximately March 2016, Defendants paid baristas a flat daily rate of $30, regardless of the number of hours worked. Because baristas typically worked at least 9 hours per day, this resulted in an effective hourly wage well below both the federal and New York State minimum wage rates.

33.     Plaintiffs, the FLSA Collective Plaintiffs, and the Class members were never notified by Defendants that Defendants were taking a tip credit against their wages,

and, even if they were notified, Defendants were not entitled to take the tip credit because (i) they paid Plaintiffs, the FLSA Collective Plaintiffs, and the Class members below even the New York tipped minimum wage, and (ii) any tip credit taken would have exceeded the maximum tip credit allowed by New York law.

## Failure to Pay Overtime

34.     Defendants did not pay Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class overtime at the rate of 1.5 times their regular hourly rate for hours worked in excess of 40 per work week.

35.     Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class frequently worked in excess of 40 hours per work week.

36.     From the beginning of the limitations period(s) to approximately March 2015, Defendants paid servers a flat daily rate of $25, regardless of the number of hours worked, including overtime hours. From approximately March 2015 to March 2017, Defendants paid servers a flat daily rate of $35, regardless of the number of hours worked, including overtime hours. From approximately March 2017 to the present, Defendants paid servers a flat daily rate of $45, regardless of the number of hours worked, including overtime hours. This resulted in an overtime rate of well below 1.5 times the applicable federal minimum. Furthermore, because New York's Hospitality Wage Order provides that flat payments are presumed to cover no more than 40 hours in a work week (12 N.Y.C.R.R. §§ 146-1.3, 146-2.2), Defendants effectively failed to pay any overtime at all to servers under New York law.

37.     From the beginning of the limitations period(s) to approximately March 2016, Defendants paid baristas a flat daily rate of $30, regardless of the number of hours

worked, including overtime hours. This resulted in an overtime rate of well below 1.5 times the applicable federal minimum during that period. Furthermore, because New York's Hospitality Wage Order provides that flat payments are presumed to cover no more than 40 hours in a work week (12 N.Y.C.R.R. §§ 146-1.3, 146-2.2), Defendants effectively failed to pay any overtime at all to baristas under New York law.

38. From approximately March 2016 to January 2017, Defendants paid baristas an hourly rate of $10.00 for all hours worked, including overtime hours. From approximately January 2017 to present, Defendants paid baristas an hourly rate of $11.00 for all hours worked, including overtime hours. Thus, Defendants did not pay baristas 1.5 times their regular hourly rate for overtime hours from March 2016 to present.

### Improper Forced Tip Sharing

39. At all relevant times, Defendants required servers to give between 10-33 percent of their daily tips to the baristas.

40. Defendants' baristas did not and do not provide personal service to patrons as a principal and regular part of their duties. Rather, the baristas' primary duty is to prepare coffee drinks based on orders received from servers. Therefore, Defendants' baristas were not eligible for tip sharing under federal and New York law. (*See, e.g.,* 12 N.Y.C.R.R. §§ 146-2.14 – 146-2.16.)

41. By improperly requiring servers to share their tips with the baristas, Defendants wrongfully deprived those Plaintiffs, FLSA Collective Plaintiffs, and members of the Class who were servers of 10-33 percent of tips that were rightfully theirs.

## Improper Retention of Tips

42.     Defendants failed to distribute to Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, a portion of the tips that they had earned.

43.     Specifically, upon information and belief, Defendants processed at least 5% of guest checks without taking out and distributing tips that guests had left for servers and others. As a result, Defendants' owners unlawfully retained a portion of tips intended for Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, in violation of federal and New York law. (*See, e.g.*, NYLL § 196-d.)

## Improper Auto-Deduction For Breaks

44.     At all relevant times, Defendants automatically deducted one hour per day from the time worked by Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class to account for breaks.

45.     Defendants automatically deducted the one hour regardless of whether employees actually took a one-hour break or any break at all.

46.     In fact, Defendants' employees, including Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, were almost never able to take breaks during the work day, and any breaks taken were far less than one hour.

47.     Furthermore, Defendants had a written policy stating that no meal breaks of any length were permitted between the hours of 5:00 p.m. and 1:00 a.m., a period that encompassed most or all of some employees' scheduled shifts. Nevertheless, Defendants deducted a one hour break from the daily time worked for those employees.

## Failure to Provide Wage Notices

48. At all relevant times, Defendants failed to provide Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class the wage notices required under Section 195 of the New York Labor Law and the New York Hospitality Wage Order, 12 N.Y.C.R.R. § 146-2.2.

49. Specifically, Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class were not provided with "written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday."

50. In or about mid-2016, Defendants for the first time presented employees with purported wage notice forms. However, the notice forms provided by Defendants were completely blank, and Defendants told employees that they were required to sign the blank forms in order to remain employed. After forcing employees to sign the blank forms, Defendants later filled them in with false information concerning the employees' purported "hourly" wage rate and tip credit amount, without ever providing employees with a copy of the completed form.

51. Furthermore, Defendants falsely certified on all of the notice forms that English was the employees' primary language, even though most employees spoke English (if at all) as a second language. No wage notice forms (even blank ones) were ever provided to employees in their primary language, as required by law. Finally, the fraudulently obtained forms were never signed or dated by Defendants.

## Failure to Provide Wage Statements

52.    At all relevant times, Defendants paid Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class a flat daily rate in cash. Such cash payments were provided on a weekly basis and were not accompanied by the wage statement required under Section 195 of the New York Labor Law and the New York Hospitality Wage Order, 12 N.Y.C.R.R. § 146-2.3.

53.    Specifically, Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class were not provided, at the time they were paid, with a statement or pay stub setting forth "hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions, and net wages."

## Unlawful Wage Deductions

54.    At all relevant times, Defendants made unlawful deductions from the wages of Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class.

55.    Specifically, when a guest left the restaurant without paying his or her bill, Defendants would deduct the amount of the bill from the tips received by the servers and other service staff on duty.

## Excessive Meal Credits

56.    At all relevant times, Defendants automatically deducted $7.50 per day from the wages of Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class as a purported meal credit.

57.    Defendants deducted said meal credits regardless of whether employees actually consumed a meal provided by Defendants.

58.     Furthermore, the $7.50 daily meal credit was far in excess of the maximum meal credit allowed under the New York Hospitality Wage Order, 12 N.Y.C.R.R. § 146-1.9.

59.     In addition, the meals offered by Defendants did not satisfy the requirements of New York law, which provides that meal credits may only be taken if the meal includes at least one type of food from all of the following food groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy or legumes; and (iv) tea, coffee, milk or juice. 12 N.Y.C.R.R. § 146-3.7.

## Failure to Maintain Records

60.     At all relevant times, Defendants failed to comply with their record-keeping obligations under federal and state law with respect to wage and hour matters. (*See, e.g.*, 12 N.Y.C.R.R. §§ 146-2.1, 146-2.17.)

61.     Among other things, Defendants did not record the hours actually worked by Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, and failed to keep and maintain records regarding the following with respect to those individuals:

> a. *Payroll and Time Records*: Defendants failed to keep and maintain contemporaneous, true, and accurate payroll records for each non-exempt employee, providing the following information for each week worked: (1) name and address; (2) social security number or other employee identification number; (3) occupational classification (position); (4) the number of hours and overtime worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding ten; (5) regular and overtime hourly wage rates; (6) basis

15

for rate of pay, whether paid by the hour, shift, day, week, salary, piece, commission, or other; (7) the amount of gross wages; (8) deductions from gross wages; (9) allowances, if any, claimed as part of the minimum wage (including tip, meal or lodging credits claimed by the employer); (10) the amount of net wages; (11) tip credits, if any, claimed as part of the minimum wage; (12) meal and lodging credits, if any, claimed as part of wages; (13) money paid in cash; and (14) student classification.

b. *Tip Sharing/Pooling Records*: Defendants failed to keep and maintain legally-required tip records, including: (1) a daily log of the tips collected by each employee per shift, whether in cash or by credit card; (2) a list of occupations that the employer deems eligible to receive tips through tip sharing or tip pooling; (3) the shares of tips that each position is scheduled to receive from tip sharing or tip pooling; and (4) the amount of tips that each employee receives from the tip share or tip pool, by date.

## Unlawful Retaliation

62.     Upon information and belief, after receiving notice of the claims and potential claims in this lawsuit by way of a demand letter delivered to Mr. Arvanitis on March 31, 2017, Defendants have taken and are continuing to take steps to unlawfully retaliate against Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class.

63.     Defendants' retaliation against Plaintiffs, the FLSA Collective Plaintiffs, and members of the Class, includes, *inter alia*, threats, attempts, and/or efforts to interfere with individuals' immigration status. In addition, after receiving notice of these potential collective and class claims, Defendants attempted to force current employees -- many of

whom are uneducated and speak little English -- to sign a so-called "arbitration agreement" waiving their rights to pursue their claims in court, including by way of a class or collective action. Defendants presented such agreements to their employees to sign under threat of termination, without disclosing the existence of these potential wage and hour claims, and without providing them a meaningful opportunity to review and consult with counsel.

## FIRST CLAIM FOR RELIEF
### (FLSA Minimum Wage Claims Brought By Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs)

64.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

65.     At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]," including Plaintiffs and each of the FLSA Collective Plaintiffs.

66.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs and the other FLSA Collective Plaintiffs the federal minimum wage for each hour worked.

67.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Overtime Claims Brought By Plaintiffs on
### Behalf of Themselves and the FLSA Collective Plaintiffs)

68.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

69.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked in excess of forty hours per work week.

70.     At all relevant times, Defendants have operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules, of willfully failing and refusing to pay Plaintiffs and the FLSA Collective Action Plaintiffs at 1.5 times the minimum wage for all work in excess of forty hours per work week, and willfully failing to keep records required by the FLSA, even though Plaintiffs and the FLSA Collective Plaintiffs have been and are entitled to overtime.

71.     At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rate, 1.5 times the federal minimum wage for hours worked in excess of forty per work week.

72.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### (FLSA Unlawful Tip Sharing Claims Brought By Plaintiffs on
### Behalf of Themselves and the FLSA Collective Plaintiffs)

73.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

74.     Throughout the statute of limitations period covered by these claims, Defendants required Plaintiffs and the other FLSA Collective Plaintiffs who were servers to give between 10-33 percent of their daily tips to the baristas, despite the fact that baristas are not customarily tipped employees and do not provide personal service to patrons as a principal and regular part of their duties.

75.     By improperly requiring servers to share their tips with the baristas, Defendants wrongfully deprived those Plaintiffs and FLSA Collective Plaintiffs who were servers of 10-33 percent of tips that were rightfully theirs, in violation of the FLSA.

76.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective improperly shared tips, liquidated (double) damages as provided by the FLSA for tipping violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
### (FLSA Unlawful Tip Retention Claims Brought By Plaintiffs on
### Behalf of Themselves and the FLSA Collective Plaintiffs)

77.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

78.     Throughout the statute of limitations period covered by these claims, Defendants unlawfully retained at least 5% of the tips left by guests for Plaintiffs and the FLSA Collective Plaintiffs, by failing to distribute those tips and keeping them in the company's coffers.

79.     By improperly retaining tips, Defendants wrongfully deprived Plaintiffs and the FLSA Collective Plaintiffs of tips that were rightfully theirs, in violation of the FLSA.

80.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective improperly retained tips, liquidated (double) damages as provided by the FLSA for tipping violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### FIFTH CLAIM FOR RELIEF
### (FLSA Retaliation Claims Brought By Plaintiffs on
### Behalf of Themselves and the FLSA Collective Plaintiffs)

81.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

82.     On or about March 31, 2017, Defendants received notice of these potential wage and hours claims by Plaintiffs, as well as the fact that such claims might also be brought on behalf of other, similarly situated employees (including current employees), by way of a demand letter from Plaintiffs' counsel dated March 30, 2017.

83.     After receiving notice of these claims, Defendants set on a course of willful retaliation against Plaintiffs and Defendants' current employees in an effort to punish them, intimidate them, and dissuade them from pursuing claims against Defendants.

84.     These retaliatory actions have included, upon information and belief, threats, attempts, and/or efforts to interfere with individuals' immigration status. In addition, after receiving notice of these potential collective and class claims, Defendants attempted to force current employees -- many of whom are uneducated and speak little English -- to sign a so-called "arbitration agreement" waiving their rights to pursue their claims in court, including by way of a class of collective action. Defendants presented such agreements to their employees to sign under threat of termination, without disclosing the existence of these potential wage and hour claims, and without providing them a meaningful opportunity to review and consult with counsel.

85.     Defendants' retaliatory actions are designed to intimidate and dissuade, and have the effect of intimidating and dissuading, a reasonable person from pursuing, continuing to pursue, or joining in the FLSA claims being asserted against Defendants.

86.     By their aforesaid retaliatory actions, Defendants have willfully violated the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

87.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages for any economic and compensatory harm suffered as a result of Defendants' retaliation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
### (New York State Minimum Wage Claims Brought By
### Plaintiffs on Behalf of Themselves and the Class)

88.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

89.     Throughout the statute of limitations period covered by these claims, Defendants knowingly paid Plaintiffs and members of the Class less than the New York State Minimum Wage under NYLL § 652 and the New York Hospitality Wage Order, 12 N.Y.C.R.R. § 146-1.2.

90.     Defendants did not pay Plaintiffs and member of the Class minimum wage for all hours worked.

91.     Defendants' failure to pay Plaintiffs and members of the Class the minimum wage was willful within the meaning of NYLL § 663.

92.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective unpaid compensation, liquidated (double) damages as provided by the NYLL for minimum wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### SEVENTH CLAIM FOR RELIEF
#### (New York State Overtime Claims Brought By Plaintiffs on Behalf of Themselves and the Class)

93.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

94.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the Class members frequently worked in excess of forty (40) hours per work week.

95.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any work week. (*See, e.g.*, 12 N.Y.C.R.R. § 146-1.4.)

96.     At all relevant times, Defendants willfully, regularly, and repeatedly failed to pay Plaintiffs and the Class members at the required overtime rates, 1.5 the minimum wage for hours worked in excess of forty (40) per work week.

97.     Defendants' failure to pay Plaintiffs and members of the Class overtime was willful within the meaning of NYLL § 663.

98.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective unpaid overtime compensation, liquidated (double) damages as provided by the NYLL for overtime wage violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (New York State Unlawful Tip Sharing Claims Brought By Plaintiffs on Behalf of Themselves and the Class)

99.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

100.    Throughout the statute of limitations period covered by these claims, Defendants required Plaintiffs and the Class members who were servers to give between 10-33 percent of their daily tips to the baristas, despite the fact that baristas do not provide personal service to patrons as a principal and regular part of their duties.

101.    By improperly requiring servers to share their tips with the baristas, Defendants wrongfully deprived those Plaintiffs and Class members who were servers of 10-33 percent of tips that were rightfully theirs, in violation of the NYLL and the New York Hospitality Wage Order, 12 N.Y.C.R.R. §§ 146-2.14 – 2.16.

102. Defendants' improper tip sharing requirement was willful within the meaning of NYLL § 663.

103. As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective improperly shared tips, liquidated (double) damages as provided by the NYLL for tipping violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### NINTH CLAIM FOR RELIEF
### (New York State Unlawful Tip Retention Claims Brought By
### Plaintiffs on Behalf of Themselves and the Class)

104. Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

105. Throughout the statute of limitations period covered by these claims, Defendants unlawfully retained at least 5% of the tips left by guests for Plaintiffs and the Class, by failing to distribute those tips and keeping them in the company's coffers.

106. By improperly retaining tips, Defendants wrongfully deprived those Plaintiffs and the Class of tips that were rightfully theirs, in violation of § 196-d of the NYLL.

107. Defendants' improper retention of tips was willful within the meaning of NYLL § 663.

108. As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective improperly retained tips, liquidated (double) damages as provided by the NYLL for tipping violations, attorneys' fees and

costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TENTH CLAIM FOR RELIEF
#### (New York State Unlawful Wage Deduction Claim Brought By Plaintiffs on Behalf of Themselves and the Class)

109.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

110.     Throughout the statute of limitations period covered by these claims, Defendants unlawfully deducted unpaid guest checks from the wages of Plaintiffs and the Class members, in violation of § 193 of the NYLL and supporting regulations of the New York Department of Labor.

111.     Defendants' unlawful wage deductions were willful within the meaning of NYLL § 663.

112.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective improperly withheld wages, liquidated (double) damages as provided by the NYLL for unlawful wage deductions, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### ELEVENTH CLAIM FOR RELIEF
#### (New York State Unlawful Meal Credit Claim Brought By Plaintiffs on Behalf of Themselves and the Class)

113.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

114.     Throughout the statute of limitations period covered by these claims, Defendants automatically deducted $7.50 per shift from the wages of Plaintiffs and the

25

Class as a meal credit, even if the employee did not actually consume a meal provided by Defendants, even though the meals offered did not satisfy the nutritional requirements stated in the New York Hospitality Wage Order as a prerequisite for taking a meal credit, and even though the maximum allowable meal credit was less than half the amount taken by Defendants. *See* 12 N.Y.C.R.R. §§ 146-1.9, 146-3.7.

115. Defendants' unlawful and excessive meal credit deductions were willful within the meaning of NYLL § 663.

116. As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective improper meal credit deductions, liquidated (double) damages as provided by the NYLL for unlawful wage deductions, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### TWELFTH CLAIM FOR RELIEF
#### (New York State Unlawful Automatic Break Deduction Claim
#### Brought By Plaintiffs on Behalf of Themselves and the Class)

117. Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

118. Throughout the statute of limitations period covered by these claims, Defendants automatically deducted one hour per shift from the wages of Plaintiffs and the Class as a meal break, regardless of whether the employee actually took a break of that length, and even when the employee took no break at all.

119. Plaintiffs and members of the Class were rarely able to take breaks during their shift, and when they did have a break it was far less than one hour. Therefore, Defendants were not permitted to automatically deduct one hour per shift from employees'

pay, and wrongfully deprived them of wages for time actually worked, in violation of the NYLL and supporting regulations of the New York Department of Labor.

120.     Defendants' unlawful automatic break deductions were willful within the meaning of NYLL § 663.

121.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover their respective wrongfully withheld wages, liquidated (double) damages as provided by the NYLL for unpaid wage claims, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRTEENTH CLAIM FOR RELIEF
**(New York State Retaliation Claim**
**Brought By Plaintiffs on Behalf of Themselves and the Class)**

122.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

123.     On or about March 31, 2017, Defendants received notice of these potential wage and hours claims by Plaintiffs, as well as the fact that such claims might also be brought on behalf of other, similarly situated employees (including current employees), by way of a demand letter from Plaintiff's counsel dated March 30, 2017.

124.     After receiving notice of these claims, Defendants set on a course of willful retaliation against Plaintiffs and Defendants' current employees in an effort to punish them, intimidate them, and dissuade them from pursuing claims against Defendants.

125.     These retaliatory actions have included, upon information and belief, threats, attempts, and/or efforts to interfere with individuals' immigration status. In addition, after receiving notice of these potential collective and class claims, Defendants

attempted to force current employees -- many of whom are uneducated and speak little English -- to sign a so-called "arbitration agreement" waiving their rights to pursue their claims in court, including by way of a class of collective action. Defendants presented such agreements to their employees to sign under threat of termination, without disclosing the existence of these potential wage and hour claims, and without providing them a meaningful opportunity to review and consult with counsel.

126.     Defendants' retaliatory actions are designed to intimidate and dissuade, and could have the effect of intimidating and dissuading, a reasonable person from pursuing, continuing to pursue, or joining in the NYLL claims being asserted against Defendants.

127.     By their aforesaid retaliatory actions, Defendants have willfully violated the NYLL's anti-retaliation provision, NYLL § 215.

128.     As a result of Defendants' willful violations of the NYLL, Plaintiffs seek damages for any economic and compensatory harm suffered as a result of Defendants' retaliation, liquidated (double) damages as provided by the NYLL for retaliation claims, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**FOURTEENTH CLAIM FOR RELIEF**
**(New York State Wage Notice Claim Brought By**
**Plaintiffs on Behalf of Themselves and the Class)**

129.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

130.     Throughout the statute of limitations period covered by these claims, Defendants failed to provide Plaintiffs and the Class members with wage notices required

pursuant to NYLL § 195 and the New York State Hospitality Wage Order, 12 N.Y.C.R.R. § 146-2.2.

131.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover from Defendants a penalty of $50 per day for each violation, not to exceed $5,000 per employee, under NYLL § 198(1-b).

### FIFTEENTH CLAIM FOR RELIEF
### (New York State Wage Statement Claim Brought By Plaintiffs on Behalf of Themselves and the Class)

132.    Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference all preceding paragraphs as if they were fully set forth again at length herein.

133.    Throughout the statute of limitations period covered by these claims, Defendants failed to provide Plaintiffs and the Class members with wage statements required pursuant to NYLL § 195 and the New York State Hospitality Wage Order, 12 N.Y.C.R.R. § 146-2.3.

134.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class members are entitled to recover from Defendants a penalty of $50 per day for each violation, not to exceed $5,000 per employee, under NYLL § 198(1-b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Plaintiffs, and members of the Class, respectfully pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this

action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

B.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.   Designation of this action as a class action pursuant to Fed.R.Civ.P. 23;

D.   Designation of Plaintiffs as Representatives of the Class;

E.   An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

F.   Penalties available under applicable laws;

G.   Costs of action incurred herein, including expert fees;

H.   Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, NYLL § 663, and other applicable statutes;

I.   Pre-judgment and post-judgment interest, as provided by law; and

J.   Such other and further relief as the Court may deem just, equitable, and proper.

Dated: New York, New York
      June 2, 2017

                                       MICHAEL P. PAPPAS LAW FIRM, P.C.

By:        __S/_____

       Michael P. Pappas, Esq.
       3 Columbus Circle, 15th Floor
       New York, New York 10019
       T: (646) 770-7890
       F: (646) 417-6688

       Email: michael@pappaslawfirm.com

       *Attorneys for Named Plaintiffs, proposed*
       *FLSA Collective Plaintiffs, and proposed*
       *Class*

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **OMONIA CAFÉ, INC.,** and **IOANNIS ARVANITIS.** I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of a Professional Service Agreement signed by the named plaintiffs in this case.

Andreas Andreou

Full Legal Name (Print)

Signature

May 17 2017

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **OMONIA CAFÉ, INC.,** and **IOANNIS ARVANITIS.** I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of a Professional Service Agreement signed by the named plaintiffs in this case.

Yenifer Barrera

Full Legal Name (Print)

_____

Signature

5/17/17

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **OMONIA CAFÉ, INC.,** and **IOANNIS ARVANITIS**. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of a Professional Service Agreement signed by the named plaintiffs in this case.


Pedro Garcia
Full Legal Name (Print)


Signature


05-17-17
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **OMONIA CAFÉ, INC.,** and **IOANNIS ARVANITIS**. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of a Professional Service Agreement signed by the named plaintiffs in this case.

Christina Ntema

Full Legal Name (Print)

Signature

May 17 2017

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **OMONIA CAFÉ, INC.,** and **IOANNIS ARVANITIS**. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of a Professional Service Agreement signed by the named plaintiffs in this case.


Dimitra-Eleonora Papaioannou

Full Legal Name (Print)


Signature


05/18/2017

Date