

December 13, 2017

**VIA ECF**

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court for the
 Eastern District of New York
225 Cadman Plaza East, Room 504 North
Brooklyn, New York 11201

Re:   **Andreou, et al. v. Omonia Café, Inc., et al.: 17-cv-03328 (KAM) (VMS)**

Dear Judge Scanlon:

Pursuant to the Court's December 1, 2017, order, the parties jointly submit this letter motion in support of judicial approval of their proposed settlement agreement.

**I.   Nature of the Action**

This is a wage and hour action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs are four former employees and one current employee of Omonia Café, a restaurant in Astoria, Queens. Plaintiffs allege that Omonia Café and its owners (John and Martha Arvanitis) failed to pay them proper minimum wage and overtime, deprived them of certain tips, failed to provide wage notices and wage statements, and committed various other violations of the FLSA and NYLL. Defendants dispute many of these allegations and also225 contend that Plaintiffs' damages are much lower than they claim because Plaintiffs did not work the number of days and hours alleged, and were only entitled to be paid at the tip credit rate, not the full minimum wage rate. (A fuller discussion of the disputed claims and issues is set forth in Section IV below).

**II.   Standard For Assessing Fairness of an FLSA Settlement**

In this Circuit, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013)

(quoting Crabtree v. Volkert, Inc., 2013 WL 593500, *3 (S.D. Ala. Feb. 14, 2013)). "In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, *1 (E.D.N.Y. Mar. 13, 2008)). When determining fairness, courts consider factors including "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting Medley v. Am. Cancer Soc., 2010 WL 3000028, *1 (S.D.N.Y. July 23, 2010)). Application of these factors in this case will demonstrate that the parties' proposed settlement of this action is fair and reasonable, and should be approved.

### III.  Settlement Background

Plaintiffs, through their undersigned counsel, first provided Defendants with notice of their claims via a 15-page demand letter on March 30, 2017, which contained detailed facts and damages calculations. Defendants obtained counsel shortly thereafter, and between early April and early June 2017, the parties' engaged in settlement discussions and exchanged information and documents. Ultimately, those discussions were unsuccessful, and Plaintiffs filed this action on June 2, 2017, on behalf of themselves and all individuals similarly situated.[1] (Prior to the action being filed, the parties' last settlement positions were $499,000 for Plaintiffs and $112,089.95 for Defendants.) Defendants filed their Answer on July 17, 2017, and an initial conference was scheduled by the Court for August 31, 2017. Due to a scheduling conflict, the Court rescheduled the initial conference *sua sponte* to October 4, 2017.

At the initial conference, the parties jointly asked the Court to refer the case to the Eastern District's court-annexed mediation program, which the parties believed would be helpful in moving the parties off of their last settlement positions and facilitating an early resolution of the action. On October 19, 2017, the parties selected as their mediator Patrick M. McKenna, who is highly-experienced in mediating wage and hour matters. The parties submitted confidential mediation statements on or about November 27, 2017, and the mediation session was held on November 29, 2017.

The mediation, at which all parties and their counsel were present, lasted approximately 6-7 hours. With the mediator's assistance, the parties were able to settle the action for $395,000.00 (an amount the EDNY mediator believed was fair and reasonable), and a

---

[1]  Plaintiffs did not seek certification of the action as a collective or class action prior to settlement. Therefore, the proposed settlement is on behalf of the five named Plaintiffs only.

The Honorable Vera M. Scanlon
December 13, 2017
Page 3

memorandum of understanding was executed by all of the parties and their attorneys. Under the terms of the settlement, Defendants will make an initial payment of 50% of the settlement amount ($197,500) within 30 days after court approval, and the remaining 50% ($197,500) will be paid to Plaintiffs in equal installments over the following 20 months. Plaintiffs have agreed that each Plaintiffs' portion of the settlement amount will be based on the proportional amount of total damages they suffered, as set forth in the Memorandum of Understanding and the proposed Settlement Agreement.

The negotiations were at arms length, with all clients fully engaged in the mediation process. Counsel for the parties, both of whom are experienced and knowledgeable in wage and hour litigation, explained the settlement terms to their respective clients in detail and answered any questions their clients had concerning the settlement. All clients were fully aware of and agreed to the amounts they were to pay or receive pursuant to the settlement, the timing of such payments, the amount of attorneys' fees, and the other standard FLSA settlement terms.

Following the mediation, the parties jointly drafted a proposed formal Settlement Agreement, a copy of which is attached hereto as Exhibit A, which the parties now respectfully submit to the Court for approval.

**IV.     Plaintiffs' Estimate of Full Recovery and Description of Bona Fide Disputes**

There are five plaintiffs in this action, each of whom worked at Omonia Café at various times between 2008 and 2017: (i) Plaintiff Andreou worked as a Server from October 2014 to March 2017; (ii) Plaintiff Barrera worked as a Server from May 2015 to March 2017; (iii) Plaintiff Garcia worked as a Barista from March 2008 to the present; (iv) Plaintiff Ntema worked as a Server from February 2014 to March 2017; and (v) Plaintiff Papaioannou worked as a Server from June 2012 to March 2017. (For purposes of determining potential recovery, Plaintiffs have only considered damages accrued during the statutory limitations period, which is three years under the FLSA and six years under the NYLL.)

Plaintiffs alleged in this action that Defendants failed to pay them at least the regular minimum wage for each hour worked, failed to pay them any overtime at all, required them to share tips with tip-ineligible personnel, failed to distribute their full amount of tips, failed to provide them with legally-required wage notices and wage statements, and committed certain other violations such as taking improper meal credits and deducting time for meal breaks that were not taken. Plaintiffs have estimated that their full recovery had they prevailed on all of their claims (including full acceptance of Plaintiffs' estimates of the number of days and hours they worked) would have been approximately $656,000, including 100% liquidated damages, but not including attorneys' fees. Plaintiffs' actual damages (not including liquidated damages or attorneys' fees) would have been approximately $353,000. For each of these claims, Defendants either dispute committing the violations or contend that Plaintiffs' damages are far less than alleged. The particulars are as follows:

The Honorable Vera M. Scanlon
December 13, 2017
Page 4

### A.  The Minimum Wage and Overtime Claims

During most of Plaintiffs' employment, Defendants did not record the number of hours Plaintiffs worked and did not pay Plaintiffs by the hour, as required by the NYLL Hospitality Wage Order since 2011. Rather, Defendants paid Plaintiffs a flat rate of $25-$45 per shift, regardless of how many hours they worked. (In addition, there was a period of time when Defendants did not pay Plaintiffs at all for day shifts, requiring Plaintiffs to work only for tips on those shifts.) Based on the number of hours Plaintiffs worked, this method of payment resulted in them receiving an effective hourly rate below the statutory minimum wage. According to Plaintiffs' calculations, and based on the number of hours each of them worked, they suffered a total of $158,136.46 in damages based on Defendants' failure to pay minimum wage, broken down as follows: (i) Plaintiff Andreou - $22,3338.40; (ii) Plaintiff Barrera - $16,176.62; (iii) Plaintiff Garcia - $38,430.00; (iv) Plaintiff Ntema - $31,468.34; and (v) Plaintiff Papaioannou - $49,723.10.

In addition, because Defendants' paid Plaintiffs a flat shift rate, the NYLL Hospitality Wage Order provides that the flat rate is deemed to cover only the first 40 hours worked, and cannot be used to cover any portion of overtime. Therefore, Defendants effectively did not pay Plaintiffs at all for any overtime hours worked during their employment, and would owe Plaintiffs 1.5 times the applicable minimum wage rate for each hour of overtime worked. According to Plaintiffs' calculations, and based on the number of overtime hours each of them worked, they suffered a total of $43,496.69 in damages based on Defendants' failure to pay overtime, broken down as follows: (i) Plaintiff Andreou - $8,468.80; (ii) Plaintiff Barrera - $0 (no overtime worked); (iii) Plaintiff Garcia - $23,251.29; (iv) Plaintiff Ntema - $9,083.80; and (v) Plaintiff Papaioannou - $2,692.80.

The parties believe (and Mediator McKenna agreed) that there is a bona fide dispute regarding Plaintiffs' minimum wage and overtime claims. Although Defendants concede paying Plaintiffs a flat rate of $25-$45 per shift over the years, they assert two primary defenses to the amount of damages claimed by Plaintiffs.

First, Defendants assert that, because Plaintiffs received a significant amount in tips each week, their minimum wage and overtime damages must be determined by comparing their effective hourly rate to the *tipped* minimum wage rate (*i.e.,* the regular minimum wage rate minus the statutory tip credit), not the full regular minimum wage rate. Defendants state that, although Plaintiffs were not provided with formal NYLL wage notices until 2016, Plaintiffs had sufficient notice and were aware throughout their employment that their tips were being used to offset Defendants' minimum wage and overtime obligations. At the mediation, Defendants cited recent supporting case law in this jurisdiction holding that lack of formal written notice of the tip credit does not necessarily deprive the employer of the ability to take the tip credit against employees' wages if the employees actually received sufficient tips and were aware that tips were a large component of their compensation. See, e.g. Carvente-Avila v. Chaya Mushkah Rest. Corp., 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) (citing NYDOL Opinion Letter dated

The Honorable Vera M. Scanlon
December 13, 2017
Page 5

March 4, 2015). Although there is authority to the contrary, Plaintiffs acknowledge that there is a risk that Defendants could successfully assert a tip credit rate defense to Plaintiffs' minimum wage and overtime claims. If it were determined that Defendants are allowed to take the tip credit, it is estimated that Plaintiffs' minimum wage and overtime damages would be reduced by 50% or more.

Second, Defendants assert that Plaintiffs have over-inflated the number of days and hours they worked, and that Plaintiffs actually worked far less than they claim. Although Defendants did not keep records of the hours Plaintiffs worked, they state that they would be able to provide other evidence (such as testimony and work schedules) showing that Plaintiffs each worked 20-25% less hours per week than they allege. Plaintiffs acknowledge that, if a factfinder were to credit Defendants' evidence concerning Plaintiffs' hours worked, Plaintiffs' minimum wage damages would be reduced by 20-25% (even if Defendants were unable to successfully assert a tip credit defense), and their overtime damages would be virtually eliminated. If Defendants were to successfully assert a tip credit defense <u>and</u> were able to show that Plaintiffs worked 20-25% less hours than claims, Plaintiffs' total wage damages could be reduced even further.

In light of these issues and defenses, Plaintiffs perceive sufficient risk of a substantial reduction in their minimum wage and overtime damages to justify the proposed settlement amount.

    **B.    The Tip-Sharing Claim**

Four of the Plaintiffs (who were servers) allege that Defendants improperly required them to share about 30% of their daily tips with the restaurant's Baristas. Plaintiffs contend that, because Baristas did not provide personal service to patrons as "a principal and regular part of their duties," they were ineligible to share in tips under the NYLL Hospitality Wage Order. Specifically, Plaintiffs assert that the Baristas' primary duty was to prepare coffee drinks based on orders received from the servers, and they had limited interaction with diners. If successful on this claim, Plaintiffs could have recovered approximately $56,292.38 in lost tips, broken down as follows: (i) Plaintiff Andreou - $12,175.00; (ii) Plaintiff Barrera - $5,365.50; (iii) Plaintiff Garcia - $0 (not a server); (iv) Plaintiff Ntema - $16,766.25; and (v) Plaintiff Papaioannou - $21,985.63.

Defendants strongly dispute that Baristas at the restaurant are tip ineligible. Defendants state that, in a cafe of this nature, the Barista is a selling point of the business and regularly interacts with customers by personally bringing beverages to their tables or preparing and serving outgoing coffee orders from the barista counter. Thus Defendants contend that Baristas have constant and direct customer interaction, and are therefore permitted to share in tips.

Based on discussions with Defendants' counsel and additional facts learned during the settlement process, Plaintiffs now believe there is a significant risk that Defendants would prevail

on the tip sharing claim. In that event, Plaintiffs' actual damages would be reduced by $56,292.38, and their full anticipated recovery would be reduced by $112,584.76.

### C.     The Tip Retention Claim

Plaintiffs allege that they witnessed Defendants process some guest checks without distributing to the staff the tip left by the customer. Defendants thereby retained a portion of Plaintiffs' tips for themselves, which violates both the FLSA and NYLL. Plaintiffs estimate, based on their observations, that Defendants retained their tips on approximately 5% of all guest checks, thereby depriving Plaintiffs of approximately $20,136 in tips, broken down as follows: (i) Plaintiff Andreou - $3,150; (ii) Plaintiff Barrera - $2,401; (iii) Plaintiff Garcia - $4,900; (iv) Plaintiff Ntema - $3,865; and (v) Plaintiff Papaioannou - $5,820.

Defendants flatly deny ever failing to distribute guest tips to staff, and state there is no evidence to support Plaintiffs' claims.

Due to problems of evidence (*i.e.*, because Defendants did not maintain tipping or other records that would enable Plaintiffs to reconcile guest checks with tips received), Plaintiffs recognize that it would be extremely difficult for them to provide proof of Defendants' unlawful tip retention. Therefore, there is a substantial risk that Plaintiffs would be unable to prevail on this claim.

### D.     The Wage Notice/Wage Statement Claims

It is undisputed that: (i) Defendants did not provide Plaintiffs with required wage notices under NYLL Section 195 until mid-2016 at the earliest; and (ii) Defendants paid Plaintiffs in cash and did not provide them with wage statements under NYLL Section 195. Therefore, Defendants concede that they would owe Plaintiffs the maximum amount of statutory damages for failing to provide wage notices ($5,000 per Plaintiff) and failing to provide wage statements ($5,000 per Plaintiff), for total damages of $10,000 per Plaintiff, or $50,000.

### E.     Other Claims

Plaintiffs allege that Defendants committed several other wage and hour infractions, including: (i) unlawfully deducting from Plaintiffs' tips if a customer left without paying their bill; (ii) beginning in 2016 or 2017, automatically deducting one hour per day from Plaintiffs' hours worked for meal breaks, even though Plaintiffs either did not take the breaks or took substantially less than one hour; and (iii) beginning in 2016 or 2017, taking improper meal credit deductions in excess of the amount permitted under the NYLL Hospitality Wage Order. Without the benefit of discovery, Plaintiffs roughly estimate that they lost approximately $5,000 each for these various infractions.

The Honorable Vera M. Scanlon
December 13, 2017
Page 7

Defendants dispute each of these claims. They deny ever deducting from Plaintiffs' tips for customers who left without paying the bill. They assert that Plaintiffs were given, and took, a full hour meal break every shift. And they assert that Defendants were permitted to deduct meal credits from Plaintiffs' wages because Plaintiffs were provided with a proper meal each and every shift.

Plaintiffs acknowledge that there is a bona fide dispute over these issues, and that they may face evidentiary problems attempting to establish these violations. Therefore, there is some risk that Plaintiffs might not prevail on these claims.

**F.     Summary**

The parties believe, and Mediator McKenna agreed, that there are bona fide disputes regarding all of Plaintiffs' claims, with the exception of the NYLL Section 195 wage notice/wage statement claim. Given the potential for a 50% or more reduction in Plaintiffs' claimed minimum wage and overtime damages, the significant risk of obtaining nothing on the tip-sharing and tip retention claims, and the disputes over the remaining claims (which are relatively insignificant), the parties believe that a settlement of $395,000 (which is greater than Plaintiffs' actual damages and represents 60% of Plaintiffs' full anticipated recovery if they were to prevail on all disputed issues) is fair, reasonable, and properly takes into account the relative risks and benefits of pursuing each claim. In addition, Plaintiffs put significant value on the ability to receive the settlement funds promptly rather than waiting for the conclusion of the litigation on some uncertain date in the future.

**V.     Plaintiffs' Attorneys' Fees Are Fair and Reasonable**

Based on Plaintiffs' counsel's qualifications and experience, the result obtained, the risk undertaken, and the actual time spent on this matter, the amount of attorneys' fees provided to Plaintiffs' counsel under the Settlement Agreement is fair and reasonable.

Plaintiffs' counsel, Michael P. Pappas, is a highly-experienced and well-respected employment attorney in New York City. He has been practicing employment law exclusively since graduating law school in 1989. Mr. Pappas graduated with honors from Boston University School of Law, where he was an Editor of the *Law Review*. During his 27-year career in employment law, Mr. Pappas has worked at some of the nation's leading law firms, including Orrick Herrington and Littler Mendelson (the largest employment law firm in the nation). Mr. Pappas was a partner at Littler Mendelson in New York for more than a decade, and in 2014 opened his own law firm. He has been quoted on employment law matters in the *Wall Street Journal*, has authored numerous employment law-related articles in publications such as the *Employee Relations Law Journal* and *Lexis Practice Advisor*, and has conducted CLE presentations on wage and hour issues.

As a partner at Littler Mendelson and now the owner of his own firm, Mr. Pappas has gained significant experience in wage and hour litigation on both the plaintiff and defense sides. He estimates that he has been either lead or second counsel on more than 30 wage and hour matters, including this action and several other plaintiff-side cases (the majority of which settled pre-litigation). As a result of Mr. Pappas's extensive knowledge and experience in wage and hour litigation, he was able to obtain a favorable pre-trial result for Plaintiffs through his skill and hard-fought negotiation.

Under the settlement, Plaintiffs' counsel will receive $60,400 from the settlement fund as attorneys' fees and costs.[2] This represents just 15.3% of the total recovery in this litigation, a substantial reduction from the 28% contingency fee provided by Plaintiffs' retainer agreement with counsel (which was already discounted from counsel's typical contingency rates of 33-38%). As requested, copies of Plaintiffs' retainer agreements with counsel are attached hereto as Exhibit B. Thus, the amount provided to Plaintiff's counsel under the settlement is fair and reasonable and well within (and in fact below) the range of fees typically awarded in cases in this Circuit. See Castaneda v. My Belly's Playlist LLC, No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (awarding plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation). See also Calle v. Elite Specialty Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069, *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit").

Furthermore, it is well-established that "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (quoting Farrar v. Hobby, 506 U.S. 103,114 (1992)). Here, Plaintiff's counsel was able to obtain a very favorable settlement of Plaintiffs claims prior to trial, which Plaintiffs view as a successful result. Thus, given the degree of success obtained, the requested attorneys' fees and costs in the parties' settlement are fair and reasonable.

Finally, the amount of fees provided to Plaintiffs' counsel is commensurate with the number of hours he actually expended in this matter since its inception. This matter has been ongoing for almost one year (counsel was first contacted by Plaintiffs in February 2017). It involves five plaintiffs, each of whom worked for a different amount of time, had different schedules and hours, and received varying rates of pay during different periods. In order to reach the agreed-upon resolution, Plaintiffs' counsel was required to expend a significant amount of time on the following tasks, among others: (i) extensive fact-finding and research; (ii) numerous

---

[2] Plaintiffs' incurred costs of $400 in this action, which consisted of the EDNY complaint filing fee. Plaintiffs' counsel advanced this cost on behalf of Plaintiffs and, pursuant to the retainer agreement, the costs are being deducted from Plaintiffs' portion of the settlement payment. There was an additional cost to Plaintiffs of $425 for the mediator's fee, which counsel also advanced on behalf of Plaintiffs. However, Plaintiffs' counsel has agreed to cover that fee himself and it is not being deducted from Plaintiffs' settlement monies.

The Honorable Vera M. Scanlon
December 13, 2017
Page 9

consultations, correspondence, and meetings with Plaintiffs, who were highly engaged in the matter; (iii) multiple complicated and time-consuming damages calculations for each of the Plaintiffs, each of whom had numerous changes in their work schedules, hours, and rates and methods of payment at frequent intervals during their employment; (iv) preparation of an extensive and highly detailed demand letter and mediation statement; (v) preparation of the collective/class action complaint; (vi) preparing for and attending the initial court conference; (vii) preparation of Rule 26(a)(1) initial disclosures; (viii) extensive pre-mediation settlement negotiations; (ix) preparing for and attending the mediation; (x) drafting and revising the settlement agreement; (xi) preparing this motion for settlement approval; and (xii) researching and addressing numerous concerns raised by Plaintiffs during the course of the matter regarding what they perceived as certain ongoing retaliatory conduct by Defendants.

Although this was a contingency case, Plaintiffs' counsel recorded all time spent on this matter. According to counsel's time records (which are available upon request), he has spent more than 120 hours prosecuting this action to date. Applying counsel's regularly hourly rate of $480,[3] attorneys' fees would have totaled more than $59,000 if this matter had been billed on an hourly basis. Thus, given the risks taken by Plaintiffs' counsel in agreeing to a contingency arrangement, a fee of $60,000 (15.3% of the total settlement) is fair and reasonable.

In light of the qualifications of Plaintiffs' counsel, the nature and scope of the issues herein, the extensive negotiations necessary to reach the agreed-upon settlement, and the result obtained, Plaintiffs' requested counsel fees are fair, reasonable, and within the range of fees typically awarded in cases in this Circuit. See Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 60 (E.D.N.Y. 2010). See also McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).

For the foregoing reasons, the parties jointly and respectfully request that the Court issue an order approving the proposed settlement in its entirety.

---

[3]   Mr. Pappas regularly charges his hourly clients $480 per hour for his services, which they pay. His rate is reasonable given his qualifications and experience, and is comparable to rates awarded to other employment attorneys of similar or lesser experience in this District. See, e.g., Hall v. ProSource Techs., LLC, 2016 WL 1555128, *12 (E.D.N.Y. Apr. 11, 2016) (awarding partner with 12 years experience litigating FLSA and NYLL wage and hour lawsuits hourly rate of $450); Bodon v. Domino's Pizza, LLC, 2015 WL 3889577, *8 (E.D.N.Y. June 4, 2015), report and recommendation adopted, 2015 WL 3902405 (E.D.N.Y. June 24, 2015) ("[P]artners in wage and hour cases are generally entitled to recover $300 to $450 per hour"); Ferrara v. CMR Contracting LLC, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners…."); Toussie v. County of Suffolk, 2011 WL 2173870, *2 (E.D.N.Y. May 31, 2011) (approving rate of $450 per hour for a partner with extensive experience).

The Honorable Vera M. Scanlon
December 13, 2017
Page 10

| | |
|---|---|
| MPP/mp | Respectfully submitted, |
| Attachments | s/Michael Pappas |
| | Michael P. Pappas |

3 Columbus Circle, 15th Fl., New York, NY 10019  ·  T: 646.770.7890  ·  F: 646.417.6688  ·  pappaslawfirm.com  ·  michael@pappaslawfirm.com